IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YEISON LEON ORTIZ
*Plaintiff*

v.

CHAD WOLF, *et al*.,
*Defendant.*

Civil Action No. ELH-20-1222

**MEMORANDUM OPINION**

Petitioner Yeison Leon Ortiz, a citizen of Honduras, has filed a Petition for Writ of Habeas Corpus, through counsel, pursuant to 28 U.S.C. § 2241. ECF 1 (the "Petition"). He has sued respondents Chad Wolf, the Acting Secretary of the U.S. Department of Homeland Security ("DHS"); Jack Kavanagh, the Director of the Howard County Detention Center; and several officials with DHS's Immigration and Customs Enforcement ("ICE"): Matthew Albence, Henry Lucero, and Francisco Madrigal. I shall sometimes refer to respondents collectively as the "Government."

Ortiz entered the United States without inspection in 2013, when he was 15 years of age. He was deported on April 1, 2020. In his suit, Ortiz challenges the deportation. In addition to his Petition, Ortiz filed an "Emergency Application for a Preliminary Injunction," seeking a Court order requiring the Government to stay or withdraw its motion to dismiss Ortiz's removal proceedings, pending in the "Baltimore Immigration Court." ECF 3 (the "P.I. Motion").

On May 14, 2020, the Court issued a Show Cause Order directing the Government to respond. ECF 4. In response, the government filed a "Motion to Dismiss Petitioner's Petition for Habeas Corpus and Opposition to Petitioner's Emergency Application for a Preliminary Injunction." ECF 7 ("Motion to Dismiss"). It is supported by ten exhibits. ECF 7-1 to ECF 7-10.

Petitioner filed an opposition to the Motion to Dismiss.  ECF 8.  He also filed a "Request for Production of Documents."  ECF 9 (the "Request for Documents").

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Government's Motion to Dismiss.  Therefore, I shall deny the P.I. Motion and the Request for Documents.

## I.   Background[1]

Ortiz was born in August 1998 and is 22 years of age.  ECF 1, ¶ 12.  He is a citizen of Honduras.  *Id.*  Ortiz illegally entered the United States on December 13, 2013, when he was 15 years of age.  *Id.* ¶ 13; ECF 7-1 (Declaration of Deportation Officer Kyle Johnston), ¶ 5.  Apprehended at the border, Ortiz was placed in removal proceedings.  ECF 1, ¶ 14.  On June 30, 2014, DHS sent a "Notice to Appear" to Ortiz by mail, in care of Ortiz's mother, who resided in Silver Spring, Maryland.  ECF 7-2 (Notice to Appear).  The Notice to Appear informed Ortiz, *inter alia*, that a removal hearing had been scheduled for February 3, 2015, before an Immigration Judge ("IJ") sitting in Baltimore.  *See id.*  In addition, Ortiz was advised of his right to appear with a lawyer.

However, Ortiz failed to appear at his hearing of February 3, 2015.  ECF 1, ¶ 14; ECF 7-3 (6/30/2014 Removal Order).  As a result, the IJ ordered Ortiz removed from the United States, *in absentia*.  ECF 1, ¶ 14; ECF 7-3.

On January 7, 2020, Ortiz was arrested by the Montgomery County Police Department for, *inter alia*, kidnapping, armed robbery, and first-degree assault.  ECF 7-1, ¶ 8.  The same day, ICE was notified of Ortiz's arrest, deemed him amenable to removal, and lodged a detainer against him.

---

[1] As explained *infra*, because the Government raises a factual challenge to the Court's jurisdiction under Rule 12(b)(1), I may consider materials outside the pleadings.

2

*Id.* ¶ 8. On March 6, 2020, the Circuit Court for Montgomery County dismissed the charges. *Id.* ¶ 9. Instead, Ortiz was charged with second-degree assault. *Id.* Four days later, on March 10, 2020, the defendant pleaded guilty in the Circuit Court for Montgomery County to second-degree assault, and the Court "sentenced him to 364 days suspended and 364 days supervised release."[2] *Id.* ¶ 10; *see* ECF 7-4 (Maryland Case Judiciary Case Information, Case No. 137159C).

On the same date, Ortiz was placed in ICE custody. ECF 1, ¶ 15; ECF 7-1, ¶ 10. Thereafter, on March 30, 2020, ICE transferred Ortiz from Maryland to a detention center in Alexandria, Louisiana, so that he could be placed on a flight to Honduras. ECF 7-1, ¶ 12. The flight, which was direct, was scheduled to depart Louisiana on April 1, 2020 at 10:10 a.m. Central Time. *Id.* ¶ 13; ECF 7-5 (ICE Air Operations Schedule).

Ortiz's counsel avers that on April 1, 2020, he moved to reopen Ortiz's removal proceedings and sought an emergency stay of Ortiz's removal. In particular, counsel emailed the pleadings to the Baltimore Immigration Court on April 1, 2020, at 9:19 a.m. Central Time. ECF 8-1 (Affidavit of Timothy W. Davis, Esq.). Less than an hour later, at 10:08 a.m. Central Time, an IJ issued an order staying Ortiz's removal. ECF 1, ¶ 17. Nonetheless, two minutes later, the ICE plane carrying Ortiz left Louisiana for Honduras. *Id.* ¶ 18. Petitioner's flight landed in Honduras at 1:00 p.m. Central Time. ECF 7-1, ¶ 13. According to DHS, it did not learn that an IJ had granted petitioner's request to stay his removal until two days later, on April 3, 2020. ECF 7-1 ¶ 15; *see* ECF 7-7 (Stay Order showing "Received" DHS date-stamp as April 3, 2020). Similarly, petitioner's counsel did not know of the IJ's order until he received a copy of it in the mail on April

---

[2] The statement of "364 days suspended" apparently means a suspended sentence of 364 days of incarceration. Moreover, the criminal justice system for the State of Maryland does not provide for "supervised release." Rather, it provides for probation. The docket reflects supervised probation for 364 days. ECF 7-4 at 1.

4, 2020.  ECF 8-1, ¶ 8.

The IJ reopened Ortiz's removal proceedings on April 15, 2020.  ECF 1, ¶ 19.  And, on April 20, 2020, Ortiz's counsel submitted a request to ICE's Office of the Principal Legal Advisor in Baltimore, requesting that DHS repatriate Ortiz to the United States.  *Id.* ¶ 20.  However, at a status hearing held in Immigration Court on April 27, 2020, DHS denied Ortiz's request.  *Id.* ¶ 21.  Further, DHS informed petitioner's counsel that it would move to dismiss Ortiz's removal proceedings because he is no longer in the United States.  *Id.*

At a master calendar hearing on April 29, 2020, DHS apprised the IJ of Ortiz's removal and moved to dismiss his Notice to Appear or, in the alternative, for the Immigration Court to reconsider its orders granting petitioner's stay of removal and reopening of his proceedings.  *Id.* ¶ 22; *see* ECF 7-9 (DHS Motion to Dismiss).

In response, Ortiz moved for administrative closure of his immigration case, in order to file a lawsuit in federal court.  ECF 7-10 (Petitioner's Motion for Administrative Closure).  Further, petitioner filed his Petition (ECF 1) and P.I. Motion (ECF 3) in this Court on May 12, 2020, in order to "remedy his unlawful removal from the United States when a stay order was in place from a judge of the Baltimore Immigration Court and compel Respondents to facilitate his return to the United States in light of the fact that the Petitioner's motion to reopen was granted."  ECF 1.

On May 27, 2020, the IJ granted DHS's motion to dismiss, denied Ortiz's motion for administrative closure, and dismissed Ortiz's immigration proceedings.  ECF 7-8 (IJ's Decision & Order).

## II. The Motion to Dismiss

The Government principally moves to dismiss petitioner's Petition on jurisdictional grounds under Fed. R. Civ. P. 12(b)(1).  *See* ECF 7 at 6, 8-11; *see also id.* at 14 (asserting that

petitioner is not entitled to a preliminary injunction because the Court is without subject matter jurisdiction).

### A.  Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to challenge the court's subject matter jurisdiction over the plaintiff's suit. Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); s*ee also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty*., 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co*., 166 F.3d 642, 647 (4th Cir. 1999). However, a court should grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *B.F. Perkins Co*., 166 F.3d at 647 (citation omitted).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge or a factual challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Hutton v. Nat'l Bd. of Examiners Inc.*, 892 F.3d 613, 620-21 (4th Cir. 2018); *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). In a facial challenge, "the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Hutton*, 892 F.3d at 621 n.7 (citing *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)); *see also Kerns*, 585 F.3d at 192. Alternatively, in a factual challenge, "the defendant maintains that the jurisdictional allegations of the complaint are not true." *Hutton*, 892 F.3d at 621 n.7 (citing *Beck*, 848 F.3d at 270). In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of*

*Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Beck*, 848 F.3d at 270; *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014); *Evans*, 166 F.3d at 647.

The Government raises both a factual challenge and a facial challenge to the Court's subject matter jurisdiction. *See* ECF 7 at 8-11. First, respondents assert, relying on 28 U.S.C. § 2241, that habeas jurisdiction no longer exists because petitioner, having already been deported, cannot satisfy the "in custody" requirement of federal habeas jurisdiction. ECF 7 at 8. As a factual challenge, I may consider evidence outside the pleadings in resolving the Court's habeas jurisdiction. In addition, the Government contends that the REAL ID Act, 8 U.S.C. § 1252, deprives federal district courts of jurisdiction to review a final order of removal. ECF 7 at 10-11. Because this is a facial challenge to the Court's jurisdiction, it must be decided based on the four corners of the Petition.

### B. Habeas Jurisdiction

I turn first to the Government's factual attack on the Court's subject matter jurisdiction. This attack rests on the premise that because Ortiz had already been deported when he filed his Petition, he cannot satisfy the "in custody" requirement of habeas jurisdiction. ECF 7 at 8-9.[3]

At its essence, habeas corpus is a mechanism to challenge the legality of executive detention. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention."); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[H]abeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."); 3 J. STORY, COMMENTARIES ON THE

---

[3] On June 25, 2020, the Supreme Court issued its opinion in *Department of Homeland Security v. Thuraissigiam*, No. 19-161, 2020 WL 3454809 (June 25, 2020). However, neither party contends that *Thuraissigiam* governs this case. Therefore, I do not address what impact, if any, that decision has on Ortiz's ability to seek habeas relief.

CONSTITUTION OF THE UNITED STATES § 1333, 206 (1833) (describing the writ as "the appropriate remedy to ascertain . . . whether any person is rightfully in confinement or not"). The writ is not only available to prisoners in state or federal custody, but also to non-citizens challenging their detention and deportation. *See* 28 U.S.C. § 1252(e)(2); *see, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 301-03 (2001) (reviewing alien's habeas challenge).

A court's jurisdiction to entertain a habeas corpus action is carefully circumscribed. The statute that authorizes federal courts to grant writs of habeas corpus, 28 U.S.C. § 2241, provides that the "writ of habeas corpus shall not extend . . . unless" the petitioner is "in custody." *Id.* § 2241(c)(1)-(4). Thus, it is well settled that the petitioner being "in custody" is a jurisdictional prerequisite to suit. *See Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam); *Foster v. Booher*, 296 F.3d 947, 949 (10th Cir. 2002) (observing that the custody requirement "is jurisdictional"); *Williamson v. Gregoire*, 151 F.3d 1180, 1182 (9th Cir. 1998) (same); *see also* BRIAN R. MEANS, FEDERAL HABEAS MANUAL § 1:3 (2020).

It is also clearly established that the "in custody" determination is made at the time the habeas petition is filed. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968). Less clear is when an individual is "in custody" as opposed to being out-of-custody for habeas purposes.

The term "in custody" is a slippery concept. *See Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 510 (1982) (acknowledging that habeas jurisdiction "has been extended beyond that which the most literal reading of the statute might require"). The Supreme Court has described the term generally as a "restraint[] on a [person's] liberty . . . not shared by the public generally." *Jones v. Cunningham*, 371 U.S. 236, 240 (1963). Further, because § 2241 "does not attempt to mark the boundaries of 'custody' nor in any way other than by use of that

word attempt to limit the situations in which the writ can be used," *Jones*, 371 U.S. at 243, the Supreme Court has construed the definition of custody "very liberally." *Maleng*, 490 U.S. at 492.

For instance, the petitioner need not be physically detained to pursue habeas relief. *Id.* at 491. To the contrary, an ongoing term of probation or parole is a sufficient restraint on a petitioner's liberty. *See e.g.*, *Jones*, 371 U.S. at 242. Similarly, an alien located in the United States who is subject to a final deportation order is considered to be "in custody" for habeas purposes, whether or not he is detained. *See Simmonds v. INS*, 326 F.3d 351, 356 (2d Cir. 2003); *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1291 (10th Cir. 2001); *Nakaranurack v. United States*, 68 F.3d 290, 293 (9th Cir. 1995). *But see Dep't of Homeland Sec. v. Thuraissigiam*, No. 19-161, 2020 WL 3454809 (June 25, 2020).

Although malleable, the definition of "custody" is not boundless. *See, e.g.*, *Maleng*, 490 U.S. at 491 (finding that the lower court's ruling "stretche[d] the language 'in custody' too far"). The Supreme Court has explained that "the collateral consequences" of a "completely expired" conviction—such as the possibility that the conviction will enhance a sentence imposed for a subsequent crime—are insufficient to render an individual "in custody" for habeas purposes. *Id.* at 492.

To my knowledge, the Fourth Circuit has not addressed the question presented here: whether an individual who was in custody, and would have been in custody if a judicial stay was promptly disseminated, but who had been removed by the time he filed a habeas petition, meets the custody requirement of § 2241. Courts of appeals that have passed on similar issues are in accord that the answer, with one exception, is "no." *See Merlan v. Holder*, 667 F.3d 538, 539 (5th Cir. 2011) (per curiam); *Kumarasamy v. Attorney General*, 453 F.3d 169, 173 (3d Cir. 2006); *Rodela v. Comfort*, 118 F. App'x 358, 360 (10th Cir. 2004); *Patel v. U.S. Attorney General*, 334

F.3d 1259, 1263 (11th Cir. 2003); *Miranda v. Reno*, 238 F.3d 1156, 1158 (9th Cir. 2001); *Terrado v. Moyer*, 820 F.2d 920, 921-22 (7th Cir.1987) (per curiam); *Sadhvani v. Chertoff*, 460 F. Supp. 2d 114 (D.D.C. 2006), *aff'd*, 279 F. App'x 9 (D.C. Cir. 2008).[4] The reason is simple: once deported, the alien is not uniquely restrained and, in fact, is similarly situated to any other non-citizen living outside of the United States. *See Patel*, 334 F.3d at 1263; *Miranda*, 238 F.3d at 1159. Therefore, because an alien who files a habeas petition after being deported cannot satisfy the "in custody" requirement, the court lacks jurisdiction over the habeas petition. *See Patel*, 334 F.3d at 1263; *Miranda*, 238 F.3d at 1159

The Third Circuit's decision in *Kumarasamy*, 453 F.3d 169, is instructive. There, the alien petitioner, a native of Sri Lanka and a Canadian citizen, filed a habeas petition challenging his removal nearly six months after he was deported to Canada. *Id.* at 171. The district court dismissed the petition for want of jurisdiction. The Third Circuit affirmed, explaining that a "petitioner who has been removed from the country is 'not subject to restraints not shared by the public generally that significantly confine and restrain his freedom'" and therefore "do[es] not satisfy the 'in custody' requirement for habeas corpus jurisdiction." *Id.* at 173 (quoting *Miranda*, 238 F.3d at 1159).

The same reasoning applies here. Although the parties quibble over the precise time that Ortiz's plane took off, all sides agree that he was deported on April 1, 2020. ECF 1, ¶ 13. Petitioner did not, however, file his Petition until over a month later, on May 12, 2020. ECF 1.

---

[4] In contrast, the Fourth Circuit, as well as the other courts of appeals, have ruled that a district court retains habeas jurisdiction over a petition filed by an alien who is subsequently deported. *See Smith v. Ashcroft*, 295 F.3d 425, 428 (4th Cir. 2002; *see also Zalawadia v. Ashcroft*, 371 F.3d 292, 298 (5th Cir. 2004); *See Leitao v. Reno*, 311 F.3d 453, 455 (1st Cir. 2002); *Chong v. Dist. Director, INS*, 264 F.3d 378 (3d Cir. 2001); *Zegarra-Gomez v. INS*, 314 F.3d 1124 (9th Cir. 2003).

Accordingly, when Oritz sought habeas relief, he was not subject to any restraints on his freedom imposed on him by the United States. It follows that Ortiz was not in custody within the meaning of § 2241 when he filed his Petition, and therefore the Court must dismiss his suit.

Petitioner resists this conclusion on two grounds. Each is unavailing. First, Ortiz insists that he is still in custody, despite having been deporting, relying on Ninth Circuit case law recognizing an exception to the general rule outlined above. *See* ECF 1, ¶ 8. The foundations of this exception trace back to *Singh v. Waters*, 87 F.3d 346 (9th Cir. 1996). In *Singh*, the Ninth Circuit exercised jurisdiction over a habeas petition that Singh filed after he was deported to India, reasoning that because "Singh was unlawfully deported," he "remains under the restraint of an order of deportation." *Id.* at 347. In particular, the court found that Singh's removal was unlawful because the government knew that an IJ had stayed his removal before the removal flight departed and because it failed to inform Singh's counsel of the impending removal, thereby preventing Singh from seeking relief prior to his deportation. *See id.* at 349-50.

Although *Singh* did not grapple with the custody requirement of § 2241, the Ninth Circuit has subsequently characterized *Singh* as standing for the proposition that a district court can exercise habeas jurisdiction over a deported alien's tardy petition "under extreme circumstances," such as when the government "remove[s] an immigrant 'in violation of the immigration judge's order and after interference with his right to counsel.'" *Miranda*, 238 F.3d at 1159 (quoting *Singh*, 87 F.3d at 349); *see Nava v. Ceja*, 546 F. App'x 629 (9th Cir. 2013 (reaffirming the vitality of the "extreme circumstances" exception).

In *Carrillo v. Ashcroft*, 111 F. App'x 532 (9th Cir. 2004), the Ninth Circuit exercised jurisdiction over a deported alien's habeas petition, where the petitioner asserted that the government never notified him that an IJ denied his motion to rescind a removal order before

10

deportation.  *See id.* at 533-34.  Similarly, in *Rivera v. Ashcroft*, 394 F.3d 1129 (9th Cir. 2005), the Ninth Circuit found that the district court could exercise jurisdiction over the deported alien's habeas petition because the alien plausibly claimed that he was a United States citizen, and the IJ utterly failed to investigate the veracity of his citizenship.  *See id.* at 1138-40.

Whatever the merits of the Ninth Circuit's exception to § 2241's custody requirement, it does not apply to this case.  Unlike in *Singh*, DHS had no knowledge on April 1, 2020, that Ortiz had filed a motion to stay his removal.  ECF 7-1, ¶ 14.  Nor did DHS know that an IJ had issued an order granting Ortiz's motion prior to his deportation.  *Id.* ¶ 15.  Indeed, DHS did not receive a copy of the IJ's order until two days after Ortiz had been relocated to Honduras.  *Id.*  For the same reason, DHS did not interfere with Ortiz's right to counsel or scuttle his attorney's efforts to obtain a stay of his removal.  In short, *Singh* is of no aid to petitioner.

Second, petitioner urges the Court to deny the Government's Rule 12(b)(1) Motion as premature, asserting that there are material facts in dispute that bear on the Court's jurisdiction.  ECF 8 at 5-7.  Specifically, Ortiz contends that it is unclear when exactly on April 1, 2020, the plane carrying him left the United States, which he argues goes to the lawfulness of his removal.  In turn, he contends that this implicates the *Singh* line of cases.  *Id.* at 8.

It is true that the record does not make pellucid the plane's precise time of departure.  Ortiz could have left the United States as scheduled, right at 10:10 a.m. Central Time.  Or perhaps the flight was delayed, and Ortiz did not take off for another few hours.  But, there is no need to comb through flight records because, either way, this Court lacks jurisdiction over Ortiz's Petition.

What matters for the purposes of habeas jurisdiction is when Ortiz was deported, whether the Government knew of the IJ's stay of removal at the time of deportation, and when Ortiz filed his Petition.  Significantly, those facts are not in dispute.  Petitioner acknowledges that he left the

11

United States and arrived in Honduras on April 1, 2020. ECF 1, ¶ 18. He does not challenge respondents' averment that DHS did not know of petitioner's motion or the IJ's stay until several days later. *See* ECF 8-1, ¶ 5 (Ortiz's counsel admitting that he did not mail a copy of the motion to stay to the Government until 5:00 p.m. EST on April 1, 2020). Finally, it is beyond dispute that petitioner did not file his Petition until after he arrived in Honduras. ECF 1. Therefore, there are no factual disputes that obfuscate the Court's subject matter jurisdiction. Rather, the facts are clear: for the purposes of § 2241, Ortiz was not "in custody" when he filed his Petition.

Accordingly, because the Court lacks subject matter jurisdiction over the Petition, I shall grant the Government's Motion to Dismiss.[5]

### III. The P.I. Motion

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1943 (2018); *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020); *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc). Rather, a preliminary injunction is "'granted only sparingly and in limited circumstances.'" *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (citation omitted).

To qualify for a preliminary injunction, the plaintiff "must establish that he is likely to succeed on the merits[.]" *Winter*, 555 U.S. at 20. Although that standard does not require "a 'certainty of success,'" the plaintiff "must make a clear showing that he is likely to succeed at

---

[5] Separate and apart from 28 U.S.C. § 2241, this Court also lacks subject matter jurisdiction over Ortiz's Petition because the REAL ID Act, 8 U.S.C. § 1252, provides that judicial review of a removal order—even if packaged as a habeas petition—is available only in the court of appeals through a petition for review of a determination rendered by the Board of Immigration Appeals. *See* 8 U.S.C. § 1252(a)(5); *see also Johnson v. Whitehead*, 647 F.3d 120, 124 (4th Cir. 2011); *Chen v. Dillis*, AW-09-2064, 2009 WL 2460758, at *2-3 (D. Md. Aug. 6, 2009).

trial.'" *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citation omitted). However, "a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek*, 138 S. Ct. at 1943-44 (citing *Winter*, 555 U.S. at 32). "Rather, a court must also consider whether the movant has shown 'that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Benisek*, 138 S. Ct. at 1943-44 (quoting *Winter*, 555 U.S. at 20); *see also Centro Tepeyac*, 722 F.3d at 188 (applying the standard for preliminary injunctions set forth in *Winter*). A preliminary injunction cannot issue unless all four factors are satisfied. *See Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013).

Because the Court is without jurisdiction to consider Ortiz's Petition, he has failed to establish that he is likely to succeed on the merits, the first *Winter* element. Accordingly, petitioner does not qualify for the "extraordinary relief" of a preliminary injunction. *Winter*, 555 U.S. at 24.

## IV.   Conclusion

For the foregoing reasons, I shall grant the Government's Motion to Dismiss (ECF 7). Accordingly, I shall deny the P.I. Motion (ECF 3) and the Request for Documents (ECF 9).

An Order follows.

Date: July 7, 2020                              _____/s/_____
                                                Ellen L. Hollander
                                                United States District Judge